The legal framework in this particular type of case is well established under Farmer v. Brennan. There's an objective component as to whether the injury was sufficiently serious, and I don't believe that's an issue here at all. What is at issue is the second standard, the culpable state of mind or deliberate indifference, the knowledge and disregard of an excessive risk. What is important is that Farmer made clear that circumstantial evidence does suffice in those types of cases, and that is a question of fact as to whether the officials had the culpable state of knowledge. I have a few questions about the record that I want to clear up in my own mind. I apologize. Can we agree that the classifying officers in this case knew that Mr. Rizzo had attacked and confessed to attacking a sex offender in 2003, right? Yes, Your Honor. Had a shank in 2014, which some unidentified third party said was maybe for the purpose of attacking a sex offender, maybe for a drug dealer? Yes, Your Honor. Had no other record of attacking a sex offender during the period of his incarceration? Yes, Your Honor, that is correct. And had a record of being housed with sex offenders without incident? That's correct, Your Honor. So if that's the case, what is the evidence as opposed to conjecture that the classification officers had that would have suggested to them that Rizzo was just, I think the term that was used was abiding his time until fate placed him into close contact with your client? Yes, Your Honor. As I believe our expert, Mr. Estin, who's got an extensive history with the Department of Corrections, wrote in the report that he prepared is that gang activities inside the prison are pervasive, they come in all sorts of nefarious forms, and that gang members will in fact bide their time until the opportunity presents itself to take retaliatory action. But had your client, had Mr. Rizzo not renounced gang membership and even testified against gang members between the time he first arrived in jail and the time the classifying officers were making their decision? He had, but the evidence is disputed as to whether renunciation is always honest or whether it is designed to enable an offender, a prisoner, to get more favorable housing designations and other programming benefits that would not otherwise be available to them. And I just want to know what the evidence is that the classifying officers would have known that would have suggested to them that his renunciation was not in fact complete, despite the fact that he had testified against the gang members. Well, we don't have any direct knowledge of what they would have known. That's why this is a circumstantial case and that's why I started with the framework that I did under Farmer. It's rare that we were going to have either what they call a kite or a note from a prisoner that says there's a green light on so-and-so or that a prison official is going to say, you know, yeah, we knew he was dangerous, but, you know, we disregard, we just thought he'd be okay because he had not had any disciplinary infractions within the past period of time. That's why we allow circumstantial evidence. In this case, what we had was an extortion attempt on Mr. Alexander that resulted in him bringing to the attention of Officer LaRocco a specific security threat from white supremacist gang members that somehow Mr. LaRocco remembered at his deposition but could not find in the file when he went to look for it. That gets us to the series of cases which hold that we cite in our brief that the class, the characteristics of the offender and the characteristics of the assailant can be sufficient to establish whether there is a deliberate indifference because gang members typically are not going to identify themselves to avoid prosecution. So what we're going to have is, as Mr. Esten discussed, I believe, a prisoner goes out on a bus from one prison to another and brings with them information that's to be relayed to another prison gang. Could you, may I interrupt you a second and just ask you to help us with line drawing here? The stabbing in the face of the child molester was 16 years before the incident at issue here. The shank was five years before. So give us some guidance on where is the line? How many incidents are needed? How remote can they be? If the stabbing had happened 35 years ago, would we still say there's a substantial risk of serious harm? Help us with this line drawing, please. Yes, Your Honor. That's a good question. That really gets into the nature of the Department of Corrections and Rehabilitation. Part of their mission is to rehabilitate these offenders. So one would hope that through programming and other enticements that a leopard can change their spots, so to speak. But the fact that it was 14 or 15 years earlier and then another five years, I think that's a question of fact for the jury to decide. I understand the Court on Summary Judgment has a gatekeeper role in assessing this. But you know, when you're in prison for 30, 40, 50 years or life, you've got a long time to wait for opportunities. What we have here is the nature of the attack itself. Mr. Rizzo suffered no injuries whatsoever. Mr. Alexander was in the hospital for several days with severe injuries to his face. The fact that Mr. Rizzo inflicted that type of damage despite all his programming and good behavior is suggestive, circumstantially, that perhaps he was waiting for an opportunity to get at someone like Mr. Alexander. So, counsel, I accept that line of thinking. Now, that evidence comes into your expert. Yes, ma'am. Right? Yes, ma'am. So how do we tie it back to a conclusion that the classifying officers themselves should have reached, should have reached that same conclusion? Yes. Well, at a minimum, one of the officers, Mr. Menchaca, was the auditing officer and he had access to additional information. It was incumbent upon him to determine whether placement of Mr. Rizzo in a level two yard with known sex offenders and people who had white supremacists as enemies would be appropriate. That goes back to what Mr. LaRocco wrote up that was missing. That implicates, as the court knows, the failure to explain or deny or missing adverse evidence. I see I've exceeded my time that I reserved for rebuttal. Does the court have any other questions? Time did you want for rebuttal? Oh, I asked for two and a half minutes. Okay. All right. So, yes, you have exceeded your time. We'll give you two minutes. Okay. Oh, so I should continue now? Yeah. We're going to have argument. Yeah. Now we're going to have argument from your opposing counsel who's at the podium. Yes, ma'am. Sorry. That's okay. All right. Ms. Ehlenbach? May it please the court. My name is Martha Ehlenbach. I'm a deputy attorney general and I represent the defendants at police. Plaintiff Alexander presented no evidence that defendants knew of a substantial risk of harm to him or that an attack by another inmate was reasonably foreseeable. Could you address the same question that Judge Koh asked, which is a wonderful question, which is how long does somebody have to keep his nose clean before a court can conclude as a matter of law, on a motion for summary judgment, that no substantial risk is – not no risk, but no substantial risk is posed by putting these two people together? Certainly, there would need to be more evidence of showing a substantial risk than there is in this case. I think it's hard to draw a specific line, but I can point, Your Honors, to some case law that might be helpful. I think the Lovatad case is a very good one to look at for this, where the plaintiff was assaulted by a member of a former prison gang and claims that officials violated the Eighth Amendment by housing those two individuals together, but those individuals had lived on the same facility for a substantial amount of time before that, and there had been no incidents between them. And so while the failure – Do you recall – do you happen to recall how substantial that amount of time was? I don't, Your Honor. I apologize. But here, we do have evidence – four years is a very substantial amount of time between the 2015 incident that was Mr. Rizzo's last known incident of violence, and – or when he was accused and charged with fighting, and the incident in this case. And certainly, the High Desert defendants, the classification officials, were acting consistent with correctional regulations when they approved the behavioral override for Rizzo. So that's another important fact here as well. Doesn't that fact go both ways? I mean, it tends to show that they sort of went out of their way to allow Rizzo to transfer into a place where he really shouldn't have been. No, Your Honor. That's not correct. So under Title 15, Section 3375.2, regulations allow officials to look at sustained rehabilitative efforts and positive behavior, and in order to place an inmate with a higher classification score, and recommend that they be housed on a different facility, a lower-level facility when it's warranted. But that is based on an individual examination of that inmate's case factors. There are certain incidents that would exclude the inmate from participating in that – from a behavioral override under CDCR memoranda. So defendants looked at the memoranda, and they applied that regulation when they were looking at Rizzo's behavioral history. Counsel, this is – to me, it's a very close case. And we have case law – and I inserted case law that says that the question of whether a prison officer's actions have exposed an inmate to substantial risk of serious harm is a question of fact that must be decided by a jury if there's any room for doubt. So if there's any room for doubt, if there's evidence going the other way, shouldn't that question be left to the jury and not to the judge? No, Your Honor, because there's a lack of evidence establishing the defendant's knowledge of a substantial risk. And a substantial risk is a legal question that Your Honors can't answer. But this is summary judgment. Yes. Why couldn't a reasonable juror, having to draw all inferences in favor of Mr. Alexander, return a verdict for Mr. Alexander based on what we know? The attack in 2003 on a child molester, the shank that may have been intended to attack a child molester or a drug dealer. Because both of those incidents are very remote in time. Even non-party officials who were evaluating inmate Rizzo after his arrival at Donovan in 2019 agreed that those incidents of violence were distant and did not constitute an ongoing pattern, and that's in the record. And the simple fact that an inmate committed a violent act in the past, especially a distant violent act, is not enough to give notice of a specific threat. Of the other violent acts, there were a couple of other fighting incidents. Do you happen to know whether any of those involved either someone who was Jewish or a sex offender? I do believe that there is a confidential memorandum indicating that a 2014 incident was contemplated because Mr. Rizzo may have wanted to attack a sex offender or a drug dealer. That's in the record. That's the shank one? Yes, that's when he attempted fighting. Okay, but there were a couple of other fighting incidents that happened, two or three others. That's correct. The incident in 2015, I'm not aware whether or not that, or why that particular inmate was involved in the fight. Why they fought. I'd also like to mention Mr. Esten's declaration. Mr. Esten's declaration was based on a significant factual inaccuracy. He said that an inmate, Rizzo, had committed violence in the past year, in 2018. And he never explained how that affected his opinion after opposing counsel admitted that that incident didn't happen in 2018, it happened in 2005. So that's a significant reason why Mr. Esten's declaration does not create a genuine dispute. And he points to no other evidence against showing defendant's knowledge. I should also point out that Alexander and Rizzo were both violent offenders. And there were both specific reasons for placing them onto a sensitive needs yard. And again, inmate Rizzo housed at High Desert State Prison, where he was prior to his transfer, for a number of years. Can I ask you a question? Did the district court make an error? The district court made sort of a big deal of the fact that the classifying defendants, the ones on the committee and Mr. Menchaca, did not know who Mr. Alexander was, did not know that he was living in the particular Level 3 special needs yard where they sent Mr. Rizzo. But that all seems contrary to our case law, that there can be substantial risk, even if you don't know who the assailant is, even if you don't know who the victim is, even if the victim is not being particularly attacked because he's that individual, but just he's part of a category that is subject to risk. No, Your Honor, it's not contrary to case law. I mean, the district court did mention that, but I think more fundamentally, the district court also mentioned the facts regarding the behavioral override system and the facts, Mr. Rizzo's lack of recent history of violence. So that's significant, if I remember correctly. But regardless, this court can, regardless of exactly how the district court put it, this court can affirm on any basis presented in the record, and so it should because there's simply no evidence that defendants knew or should have known of a substantial risk. Wilk v. Nevin, another case from this court, is interesting because it presents a significant contrast to the facts that we have here. There was evidence that the plaintiff in that case expressed a concern that this other inmate was threatening to kill him, and yet prison officials did not place those two inmates on an enemies list and did not separate them. But here, again, we had no evidence that defendants had any knowledge of any of those things. I'd like to also turn briefly to the allegations regarding extortion and the memorandum by Officer LaRocco. Testimony from Officer LaRocco. He testified that Alexander denied being worried for his safety as a result of the possibility— I'd like to ask you another question to follow up on what Judge Wardlaw asked you. So you're—are you arguing that as a matter of law, somebody with Mr. Rizzo's facts, having stabbed a child molester in the face 16 years ago, 2003, and manufactured a shank to allegedly attack a child molester or drug dealer in 2014, could never constitute a substantial risk of serious harm? Not necessarily—on the facts of this case, yes. But that's effectively what we're doing, right? We're saying on summary judgment as a matter of law— Yes, Your Honor, without— —constitute a substantial risk of serious harm. That's correct. Without— So you are asking for us to make that holding, right? Yes, without additional information showing—available to defendants showing a knowledge that inmate Rizzo posed a danger or that Alexander was at a specific risk, then, yes, as a matter of law, Mr. Rizzo's background did not indicate that he posed a substantial risk. And what authority do you have for that position, that as a matter of law, we should hold? I think the Labattad case is the best case for that, because in Labattad, the court found that the failure to give advance notice of a specific threat is not dispositive, but there's no evidence in the record showing defendants drew the inference of a substantial risk to the plaintiff when the plaintiff housed with another inmate for a substantial period of time without issue. And in this case, we have a significant period of time where inmate Rizzo was violence-free. And briefly, to go back to the extortion issue, there's no evidence— One last question. Should we analyze the Eighth Amendment claim and the negligence claim the same or differently? In this case, the evidence doesn't show that the risk of harm to inmate Alexander was foreseeable. I know you want the same result, but I'm saying is the legal analysis the same? I mean, the foreseeability analysis is slightly different, but I think under Heraldo— Is it less demanding, more demanding? It would be slightly less demanding, but I think there still needs to be some sort of evidence showing that the defendant's actions created an unreasonable danger to some extent like that, and that simply just isn't the case here. All right. Thank you very much, Ms. Ellenbach. Thank you. Mr. Ruppman? Yes, Your Honor. Thank you. I agree as to the last point. It is a less demanding standard for state law negligence than the Eighth Amendment, but the gist of the inquiry is the same for both. I'd like to address Mr. Esten's declaration. In our reply brief to the district court, we explained what happened that led him to put 2018. That was the date he reviewed the date the memorandum was dated, and he simply mistakenly put that down in his notes and went with that, but he didn't address the recency of that in 2018. Moving it back to 2014, he was clearly aware that that happened in 2005. But the essence of your argument is that the experts' information about gang members not reforming but biding their time, that's the thing that the corrections officers should have known or did know because they're corrections officers, that gets you past summary judgment in this case. Am I right? I believe so. That gets us to the left-hand talking, left-hand, right-hand situation. If officials are contemplating transferring someone to another institution, part of the reasonableness of their behavior would be making sure they're not sending them to an environment that they're incompatible with. That gets us to what Mr. Miller and the extortion demand, as counsel was starting to bring up. Mr. Alexander did say, I have no specific information at this time that I am being threatened, but I am concerned about being retaliated against by white supremacists. I see I'm out of time. Does the court have any other questions? Does anyone have any other questions? Do you? No. Thank you. Okay. Thank you. All right. I think we have no further questions. Alexander v. Diaz will be submitted. Thank you again. You're welcome. You're welcome. We understand your conflicts. Acosta v. Kejikazi is submitted, and Moreno-Lorena v. Allstate Northbrook is also submitted, and this session of the court is adjourned for today. All rise. Court procedure session is adjourned.
judges: WARDLAW, KOH, UNKNOWN